IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Energy Intelligence Group, Inc., and Energy Intelligence Group (UK) Ltd., | ) ) ) |
| Plaintiffs/Counterclaim-Defendants, | ) ) ) |
| v. | ) ) |
| Constellation Energy Generation, LLC, | ) ) ) |
| Defendant/Counterclaim-Plaintiff. | ) |

Case Nos. 20-cv-3983 and 21-cv-5689

Judge Joan B. Gottschall

## MEMORANDUM OPINION AND ORDER

Since 2007, Constellation Energy Generation, LLC ("Constellation"),[1] has subscribed to Nuclear Intelligence Weekly ("NIW") or a predecessor trade periodical published by Energy Intelligence Group, Inc., and Energy Intelligence Group (UK) Ltd. (collectively, "EIG"). *See* Countercl. ¶ 9.[2] EIG filed these consolidated copyright infringement actions against Constellation in 2020 and 2021, alleging in both cases that one or more EIG employees forwarded to hundreds of other EIG employees email messages with digital copies of NIW issues attached. *See* Compl. ¶¶ 29–44, ECF No. 1. After this court denied EIG's motion to dismiss the first complaint for failure to state a claim, 2021 WL 1561711 (Apr. 21, 2021), EIG answered the complaint and pleaded three counterclaims arising under Illinois law: a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp. Stat. § 505/1 *et seq.*, in count I; common law fraud in count II; and fraud in the inducement of EIG's subscription

---

[1] Constellation changed its name while this case was pending. It was formerly known as Exelon Generation Co. On March 1, 2022, this court granted the parties' joint motion to restyle the caption of these cases to reflect the name change. ECF No. 88.

[2] Citations to "Countercl." refer to the separately numbered paragraphs of Constellation's counterclaims on pages 30–50 of its answer, ECF No. 44.

agreements with Constellation in count III. Countercl. ¶¶ 38–53, 54–73, 74–94. Constellation bases its counterclaims on allegations that "EIG's business model is actually predicated on luring customers into subscription agreements, entrapping them in copyright lawsuits, and then extorting massive settlements that have no relationship to the actual value of EIG's publications." Countercl. ¶ 10.

Before the court is EIG's motion to dismiss Constellation's counterclaims for failure to state a claim upon which relief can be granted. EIG argues that Constellation has not adequately alleged several elements of its counterclaims and that the counterclaims would impose disclosure obligations upon copyright owners that conflict with the notice requirements of the Copyright Act, 17 U.S.C. § 401. *See* Mem. Supp. Mot. to Dismiss Countercls. 7–13, ECF No. 51-1. For the reasons that follow, the court grants the motion but does not reach EIG's preemption arguments.

## I. Background

### A. Procedural History

EIG filed the first of these consolidated suits, Case No. 20-cv-3983, in July 2020. In October 2021, EIG filed a second infringement action against Constellation, Case No. 21-cv-5689, alleging substantially similar copyright infringement claims based on certificates of copyright registration issued after the first case was filed. Constellation filed an answer asserting counterclaims, and it asserted identical counterclaims in the second suit. *See* Compl., No. 21-cv-5689, ECF No. 1 (N.D. Ill. Oct. 25, 2021); Ans. 24–45, No. 21-cv-5689, ECF No. 8 (N.D. Ill. Dec. 10, 2021).

This court granted EIG's unopposed motion to reassign the second case as related to the first, *see* LR 40.4, and consolidated the two cases "for all purposes." ECF No. 77 (Dec. 14, 2021). After consolidation, the parties agreed that all briefing on the motion to dismiss the

counterclaims in No. 20-cv-3983 "shall also apply to the defendant's identical counterclaims in case No. 21-cv-5689." ECF No. 79 (Jan. 4, 2022). This opinion cites the papers in Case No. 20-cv-3983 for simplicity's sake. The record reflects that consolidated discovery is ongoing under the supervision of Judge McShain. *See, e.g.*, ECF Nos. 90, 92.

### B. Constellation's Counterclaims

EIG disputes many of the factual allegations made in Constellation's counterclaims and argues that certain inferences Constellation draws are unwarranted or misleading. *See, e.g.*, ECF No. 51-1 at 1–3. Consistent with the Rule 12(b)(6) standard, the court recites the facts alleged in the counterclaims in the light most favorable to Constellation and draws all reasonable inferences in Constellation's favor–without vouching for the truth or falsity of the facts alleged. *See Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 384 (7th Cir. 2010); *Cozzi Iron & Metal*, 250 F.3d at 574 (citing *Gastineau v. Fleet Mortg. Corp.*, 137 F.3d 490, 493 (7th Cir. 1998)).

EIG allegedly decided in 2005 that its subscription-based business model "was insufficiently profitable in the digital era." Countercl. ¶ 12. With the approval of its board, EIG implemented a strategy of "aggressively pursuing copyright litigation" to increase profits. *Id*. To "accomplish this goal, EIG would lure unwitting customers into subscription agreements, aggressively and covertly track their activity, entrap them in copyright lawsuits, and then extract massive windfall settlements not rationally tied to the conduct at issue." Countercl. ¶ 13. Since 2005, EIG has filed approximately 75 similar lawsuits against subscribers to its publications. Countercl. ¶ 11.

Constellation cites a 2007 internal email from an EIG employee describing a portion of its copyright enforcement program as "entrapment" (EIG disputes this inference and argues that the employee's comments are taken out of context). Countercl. ¶ 14. Constellation also points to

a 2009 EIG internal marketing report and subsequent policy changes indicating that EIG was ratcheting up its enforcement efforts (EIG disputes some of these inferences as well). *See* Countercl. ¶¶ 16–20. EIG has staff dedicated to managing its "copyright scheme" and offers a $5,000 bonus to any EIG employee who identifies an opportunity for copyright litigation, with an additional $5,000 payment if the litigation produces a monetary recovery. *See* Countercl. ¶¶ 18–20 (partially "upon information and belief").

By 2009, EIG had begun aggressively using copyright protection software to track its subscribers. *See* Countercl. ¶¶ 32–34. The email tracking data on which EIG's complaints against Constellation are based, *see* Compl. ¶¶ 35–38, was harvested using that software, *see* Countercl. ¶ 35. The software provided EIG with actual notice of Constellation's allegedly infringing activity in 2018 or earlier, "but, upon information and belief, [EIG] delayed filing suit until July of 2020 to increase its claimed statutory damages." Countercl. ¶ 35 (citing Compl. ¶ 38); *see also* Countercl. ¶¶ 36–37.

Constellation alleges that EIG's "copyright litigation scheme" has been "wildly successful, allowing EIG to increase its profits even while its subscription business was declining." Countercl. ¶¶ 21, 24. EIG touts its publications on its website but does not disclose that "[n]early all of EIG's profit comes not from the subscription fees that its customers pay for EIG's publications, but from its aggressive pursuit of copyright litigation against those customers." Countercl. ¶¶ 23–24.

Constellation also pleads, "On information and belief, EIG's written subscription agreements are purposefully vague in order to confuse and mislead customers like [Constellation] as to what is and is not permissible." Countercl. ¶ 25; *see also* Countercl. ¶¶ 25–29 (quoting certain allegedly vague and confusing provisions). Further, "Upon information and

belief, EIG knows that its customers lack clarity about what is permissible under EIG's written and unwritten policies, but intentionally does not properly educate customers so that it can entrap those customers in litigation that is substantially more profitable to EIG than the customers' subscriptions." Countercl. ¶ 31. Constellation identifies categories of false or misleading statements made by EIG:

> In both written and oral communications with [Constellation] employees located in Illinois, EIG concealed, suppressed, and/or omitted material information, including but not limited to the facts that (1) EIG intends to entrap its customers in copyright litigation, (2) EIG seeks to aggressively pursue its customers for copyright violations, (3) EIG seeks to obtain windfall settlements from its customers, (4) EIG's business model is predicated on suing its customers in copyright litigation, (5) EIG incentivizes its employees to uncover potential copyright lawsuits by paying up to $10,000 bonuses, (6) EIG incentivizes other employees by offering them a cut of any proceeds generated through copyright litigation, (7) EIG derives nearly all of its profits from copyright litigation, and (8) EIG electronically tracks its customers' usage of EIG's subscriptions for the purpose of instituting litigation.

Countercl. ¶ 42; *see also* Countercl. ¶¶ 57, 77 (substantially similar allegations). EIG omitted this information, or made misrepresentations about it, from its written and oral communications with Constellation. *See* Countercl. ¶¶ 42–46, 60–63 (providing specific examples of written communications, including dates, and identifying several specific EIG employees, salespersons, reporters, and copyright enforcement personnel).

## II. Motion to Dismiss Standard

The court applies the same standard to a Rule 12(b)(6) motion to dismiss a counterclaim as it does on a motion to dismiss a complaint for failure to state a claim. *See Cozzi Iron & Metal, Inc. v. U.S. Office Equip., Inc.*, 250 F.3d 570, 574 (7th Cir. 2001). To survive a Rule 12(b)(6) motion to dismiss, a pleading must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Katz-Crank v. Haskett*, 843 F.3d 641, 646 (7th Cir. 2016) (quoting *Twombly*,

550 U.S. 544, 570 (2007)). A complaint satisfies this standard when its factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555–56 (citations omitted); *see also Atkins v. City of Chi.*, 631 F.3d 823, 832 (7th Cir. 2011); *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). When deciding a motion to dismiss under Rule 12(b)(6), the court takes all facts alleged by the pleader as true and draws all reasonable inferences from those facts in the pleader's favor, although conclusory allegations that merely recite the elements of a claim are not entitled to this presumption of truth. *Katz-Crank*, 843 F.3d at 646 (citing *Iqbal*, 556 U.S. at 663); *Virnic v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

EIG contends that Federal Rule of Civil Procedure 9(b)'s heightened pleading standard applies to Constellation's counterclaims. Rule 9(b) requires a party alleging fraud or mistake to "state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Rule 9(b) generally requires the complaint to set out the who, what, when, where, and how of the alleged fraud, though "the exact level of particularity that is required will necessarily differ based on the facts of the case." *Anchor Bank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011) (citation omitted).

Rule 9(b) applies to a claim that " 'sounds in fraud'—in other words, one that is premised upon a course of fraudulent conduct." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 446–47 (7th Cir. 2011) (quoting *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007)). There is no dispute here that Rule 9(b) "applies to fraudulent concealment claims," like the common law fraud and fraudulent inducement claims alleged in counts II and III of Constellation's counterclaims. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 571 (7th Cir. 2012). Similarly, "[w]hen a plaintiff in federal court alleges fraud

under the ICFA, the heightened pleading standard of Federal Rule of Civil Procedure 9(b) applies." *Pirelli Armstrong Tire*, 634 F.3d at 441 (citing *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 883 (7th Cir. 2005)).

### III. Analysis

#### A. Common Law Fraud and Fraudulent Inducement Claims

"Fraudulent inducement is a form of common-law fraud." *Lagen v. Balcor Co.*, 653 N.E.2d 968, 972 (Ill. App. Ct. 2d Dist. 1995) (citation omitted). The parties agree that Constellation's common law fraud and fraudulent inducement claims should be analyzed together. *See* Mem. Supp. Mot. to Dismiss Countercls. 7, ECF No. 51-1; Resp. Opp'n Mot. to Dismiss Countercls. 11–13, ECF No. 59.

To establish common law fraud, Constellation must adequately allege:

> (1) a false statement of material fact; (2) known or believed to be false by the person making it; (3) an intent to induce the plaintiff to act; (4) action by the plaintiff in justifiable reliance on the truth of the statement; and (5) damage to the plaintiff resulting from such reliance.

*Newman v. Metro. Life Ins. Co.*, 885 F.3d 992, 1003 (7th Cir. 2018) (quoting *Doe v. Dilling*, 888 N.E.2d 24, 35–36 (Ill. 2008)). Because Constellation alleges that EIG fraudulently concealed material information, *e.g.*, Countercl. ¶ 77, Constellation must also plead a plausible claim that EIG "concealed material information while under a duty to disclose" imposed by Illinois law. *Newman*, 885 F.3d at 1004 (citing *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 593 (Ill. 1996)); *see also Nelson v. Great Lakes Educ. Loan Servs., Inc.*, 928 F.3d 639, 649 (7th Cir. 2019) (discussing the distinction between fraud claims based on affirmative misrepresentations and fraudulent concealment claims).

At the outset, the court cannot agree with EIG's argument that the facts it allegedly concealed were immaterial. Mem. Supp. Mot. to Dismiss Countercls. 2, 10. For ICFA purposes,

7

"An omission is 'material' if the plaintiff would have acted differently had it been aware of it, or if it concerned the type of information upon which it would be expected to rely in making its decision to act." *Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 741 (7th Cir. 2017) (quoting *DOD Techs. v. Mesirow Ins. Servs., Inc.*, 887 N.E.2d 1, 10 (Ill. App. Ct. 1st Dist. 2008)). "In other words, the fact 'must be essential to the transaction between the parties.' " *Cozzi Iron & Metal, supra*, 250 F.3d at 576 (quoting *L.R.J. Ryan v. Wersi Elec. GmbH & Co.*, 59 F.3d 52, 54 (7th Cir. 1995)) (referring to the disjunctive test quoted in *Toulon* in the previous sentence). EIG argues that its litigation history, revenues, and copyright enforcement policies and practices "are not essential" to the subscription agreement. Mem. Supp. Mot. to Dismiss Countercls. 10. However, Constellation specifically pleads that it "would not have subscribed to *NIW* had it known the information that EIG concealed, suppressed and/or omitted." Countercl. ¶ 49. This suffices to allege materiality because an "affirmative statement" in a pleading that Constellation would not have subscribed to NIW had it known of the omitted facts is all federal pleading standards require. *Toulon*, 877 F.3d at 740 (citations omitted); *Cozzi Iron & Metal*, 250 F.3d at 576 (holding plaintiff's allegation that "it would not have entered into the leases if it had known" of the omitted fact sufficed to survive Rule 12(b)(6) motion).

The court next considers whether Constellation has adequately alleged that EIG owed it a duty to disclose those facts. In Illinois, a "duty to disclose arises only in certain situations, including where the 'plaintiff and defendant are in a fiduciary or confidential relationship' and 'where plaintiff places trust and confidence in defendant, thereby placing defendant in a position of influence and superiority over plaintiff.' " *Squires-Cannon v. Forest Preserve Dist. of Cook Cnty.*, 897 F.3d 797, 805 (7th Cir. 2018) (quoting *Connick*, 675 N.E.2d at 593). Constellation disavows having a fiduciary or special relationship with EIG. Resp. Opp'n Mot. to

8

Countercls. 12–13, ECF No. 59. Constellation instead relies, *see id.*, on cases, such as *Newman*, holding that a duty to disclose "may arise when a defendant makes a statement 'that it passes off as the whole truth while omitting material facts that render the statement a misleading half-truth.'" *Newman*, 885 F.3d at 1003 (quoting *Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 397–98 (7th Cir. 2009)).

In *Newman*, the plaintiff bought a long term disability insurance policy when she was 56 years old. *Id.* at 996. Based on a brochure for the policy, she selected a reduced pay option. *Id.* at 997. The brochure described the reduced pay option this way: "By paying more than the regular premium amount you would pay each year up to the Policy Anniversary on or after your 65th birthday, you pay half the amount of your pre-age 65 premiums thereafter." *Id*. Newman made the required payments, and her premium was cut in half when she turned 65. *Id.* Two years later the insurer doubled her premium, citing language in the insurance policy documents reserving its right to change rates. *See id*. at 997. Newman brought several claims under Illinois law against her insurer, including breach of contract, ICFA, and common law fraudulent concealment claims. *See id.* at 998.

The Seventh Circuit held that Newman's complaint stated claims for which relief could be granted. The court of appeals first determined that the insurance policy was ambiguous as to the insurer's power to raise Newman's rate. *See id.* at 999-1000. Regarding Newman's fraudulent concealment claim, she alleged plausibly that the brochure and policy documents she received purported to be the "whole truth" about how the insurer "intended to treat Reduced-Pay policyholders." *Id.* at 1004. Since the policy "did not reveal" the insurance company's true intentions and Newman "reasonably believed that her post-anniversary rate [after she turned 65] was fixed," she adequately alleged that the insurer owed her a duty to disclose its intentions. *Id.*

9

As part of its analysis of Newman's fraudulent concealment claim, the Seventh Circuit distinguished *Crichton, supra*, another case involving insurance documents, "because the communications from the insurance provider never purported to explain all the underwriting factors that might affect the premium" in *Crichton*. *Id.* at 1004. As this distinction illustrates, the existence of a duty to disclose turns on whether the party charged with the duty makes a statement that it passes off as the whole truth, as contrasted with a statement, such as a summary, that does not purport to cover the subject comprehensively. *Compare Newman*, 885 F.3d at 1004; *Sieving v. Cont'l Cas. Co.*, 535 F. Supp. 3d 762, 773 (N.D. Ill. 2021); and *Heider v. Leewards Creative Crafts, Inc.*, 613 N.E.2d 805, 811 (Ill. App. Ct. 2d Dist. 1993); *with Crichton*, 576 F.3d at 398; and *Apotex Corp. v. Merck & Co.*, 229 F.R.D. 142, 149 (N.D. Ill. 2005) (defendant "did not say or imply that the explanations were a detailed, blow-by-blow description").

In its response brief, Constellation points to language in some of its subscription agreements with EIG, email messages sent to EIG's customers with its publications, and an order form as collectively containing a half-truth similar to the policy documents in *Newman*. *See* Countercl. ¶¶ 26–29. As an example, the subscription agreements for 2013–18 allegedly included the following language: "Authorized Users may occasionally distribute a copy of a story from the EI Services to a few individuals, and in a non-systematic manner in the ordinary course of business, provided the copyright and other proprietary rights notices are included and that Subscriber and/or Authorized User does not edit, alter or abridge the content from the EI Services." Countercl. ¶ 26 (citation omitted). This language, argues Constellation, gave rise to a duty on EIG's part to "to disclose that it had crafted these statements in a vague manner, that it did so to lure employees into exceeding the scope of the subscription agreement, that it was

10

tracking their activity, and that it was perpetrating a scheme to manufacture a [sic] copyright-infringement litigation." Resp. Opp'n Mot. to Dismiss Countercls. 12–13, ECF No. 59.

Unlike the brochure and insurance policy in *Newman*, the statements Constellation cites do not claim to disclose everything about EIG's copyright enforcement policies and practices. The communications do not mention enforcement at all. *See* Countercl. ¶¶ 26-29. Missing from the counterclaims is a plausible allegation similar to Newman's allegation (supported by the Seventh Circuit's construction of the policy as ambiguous) that she reasonably understood from the brochure and policy that her premium would not be increased after she turned 65. *See* 885 F.3d at 1004; *Sieving*, 535 F. Supp. 3d at 773. Constellation does not plead that it reasonably understood from EIG's communications that its allegedly infringing activity was authorized or that EIG would not take steps to enforce its intellectual property rights. *See generally* Countercl. ¶¶ 25–37. Rather, Constellation pleads that "contradictory and vague terms and . . . policies prevent customers like [Constellation] from understanding what activities EIG permits and prohibits." Countercl. ¶ 30. As in *Crichton*, the communications Constellation cites do not "purport to explain" all of EIG's copyright enforcement policies and procedures, so they do not give rise to a duty to disclose on EIG's part. 576 F.3d at 398 (citing *Apotex*, 229 F.R.D. at 149). In light of this conclusion, the court need not reach EIG's arguments that Constellation has not adequately alleged damages in support of its common law fraud and fraud in the inducement counts.[3]

---

3 EIG argues for the first time in its reply brief that Constellation fails to allege plausibly that it relied on the communications described in paragraphs 26–29 of its counterclaims. ECF No. 62 at 5. The court does not reach this argument because EIG waived it by making it for the first time in its reply. *E.g.*, *Hernandez v. Cook Cnty. Sheriff's Office*, 634 F.3d 906, 913 & n.9 (7th Cir. 2011) (citing *United States v. Diaz*, 533 F.3d 574, 577 (7th Cir. 2008)).

### B. Illinois Consumer Fraud Act Claim

Illinois's "Consumer Fraud Act is a regulatory and remedial statute intended to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 608 (7th Cir. 2013) (quoting *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002)). An ICFA claim brought by a private party has five elements: "(1) a deceptive [or unfair] act or practice by the defendant; (2) the defendant intended that the plaintiff rely on the [deceptive or unfair practice]; (3) the deceptive [or unfair] act[s] occurred during a course of conduct involving trade or commerce; and (4) actual damage to the plaintiff; (5) proximately caused by the deceptive [or unfair] act[s]." *Phila. Indem. Ins. Co. v. Chi. Title Ins. Co.*, 771 F.3d 391, 402 (7th Cir. 2014) (citing *De Bouse v. Bayer AG*, 922 N.E.2d 309, 313 (Ill. 2009)).

EIG's argument in its opening memorandum of law for dismissal of Constellation's ICFA claim consists of two paragraphs, the substance of which is:

> [Constellation] asserts that the purportedly material facts EIG allegedly omitted or concealed are identical to those facts it identified in support of its common law fraud and fraud in the inducement counterclaims. Thus, [Constellation] fails to state a claim for a violation of the ICFA because the allegedly concealed or omitted facts are not material to the transaction between the parties for the same reasons as set forth in Section I.B above.

ECF No. 51-1 at 11 (internal citation omitted). As this passage makes clear, EIG read Constellation's counterclaims as reiterating its fraud-based theories. *See id.*

The court agrees that Constellation's counterclaims, as pleaded, rely solely on fraud-based theories. *See* Countercl. ¶¶ 42–57. Hence count I, as pleaded, fails to allege a deceptive or unfair practice under the ICFA for the same reasons as Constellation's common law fraud and fraud in the inducement claims. *See, e.g.*, *Newman*, 885 F.3d at 1003; *MidFirst Bank v. Riley*,

12

2018 IL App (1st) 171986, ¶ 35; *First Tr. Portfolio L.P. v. Jackson Nat'l Life Ins. Co.*, 2009 WL 10697647, at *3 (N.D. Ill. Sept. 18, 2009).

Constellation articulates a distinct ICFA claim in its response to EIG's motion to dismiss. *See* ECF No. 59 at 8–9. Constellation contends that EIG's alleged behavior amounts to an unfair business practice even if it does not rise to the level of fraud or fraudulent concealment. *See id.* The ICFA sweeps more broadly than fraud claims. It "provides redress 'not only for deceptive business practices, but also for business practices that, while not deceptive, are unfair.' " *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 575 (7th Cir. 2012) (quoting *Boyd v. U.S. Bank, N.A. ex rel. Sasco Aames Mortg. Loan Tr. Series 2003-1*, 787 F.Supp.2d 747, 751 (N.D. Ill. 2011)) (other citations omitted). "Because neither fraud nor mistake is an element of unfair conduct under Illinois' Consumer Fraud Act, a cause of action for unfair practices under the Consumer Fraud Act need only meet the notice pleading standard of Rule 8(a), not the particularity requirement in Rule 9(b)." *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 670 (7th Cir. 2008). Several factors affect whether a trade practice is unfair:

> A trade practice may be deemed unfair if it (1) "offends public policy"; (2) is "immoral, unethical, oppressive or unscrupulous"; or (3) "causes substantial injury to consumers." *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 739 (7th Cir. 2019). It's not necessary to establish all three criteria. "A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Robinson*, 775 N.E.2d at 961 (quotation marks omitted).

*Horist v. Sudler & Co.*, 941 F.3d 274, 280 (7th Cir. 2019).

Constellation does not expressly discuss these factors in its response brief, however, and its argument consists of little more than a repetition of its factual allegations. *See* ECF No. 59 at 8–9. EIG argues for the dismissal of Constellation's alternative ICFA claim in its reply, but

13

Constellation has not been afforded an opportunity to respond to EIG's arguments, as a reply brief is ordinarily the last word in motion briefing. *See* ECF No. 62 at 8–9.

The ICFA claim articulated for the first time in Constellation's response brief is not properly before the court under "the axiomatic rule that a plaintiff may not amend his complaint in his response brief." *Pirelli Armstrong Tire, supra*, 631 F.3d at 448 (citing *Frederico v. Home Depot*, 507 F.3d 188, 201–02 (3d Cir. 2007)); *accord Thomason v. Nachtrieb*, 888 F.2d 1202, 1209 (7th Cir. 1989) ("It is a basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss, nor can it be amended by the briefs on appeal" (citing *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1107 (7th Cir. 1984)) (other citation omitted)). The court therefore dismisses Constellation's ICFA counterclaim as pleaded but implies no view on the alternative ICFA counterclaim articulated for the first time in its response brief.[4]

### IV. Conclusion

For the reasons stated, EIG's motion to dismiss Constellation's counterclaims for failure to state a claim is granted. Constellation may file amended answers, if it wishes, within 21 days (on or before April 13, 2022).

Dated: March 23, 2022                                    /s/
                                                          Joan B. Gottschall
                                                          United States District Judge

---

[4] As explained in the text, the applicable standard requires consideration of complex matters, including public policy considerations, to determine whether an unfair business practice has been alleged. These considerations have not been meaningfully briefed, and the Seventh Circuit has cautioned federal courts considering ICFA claims that it is not the role of federal courts "to break new ground in state law." *Roppo v. Travelers Com. Ins. Co.*, 869 F.3d 568, 596 (7th Cir. 2017) (quoting *Lopardo v. Fleming Cos., Inc.*, 97 F.3d 921, 930 (7th Cir. 1996)). If this issue returns to the court, the complex issues raised by the potential ICFA counterclaim must be fully briefed. *See generally Design Basics, LLC v. Kerstiens Homes & Designs, Inc.*, 1 F.4th 502, 503–04 (7th Cir. 2021); *G & G Closed Cir. Events, LLC v. Castillo*, 327 F. Supp. 3d 1119, 1133–34 (N.D. Ill. 2018); *Malibu Media, LLC v. Thal*, 2016 WL 7240764, at *3-4 (N.D. Ill. Dec. 15, 2016).